# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| TEXAS ORAL AND FACIAL SURGERY, PA, | § § § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:18-CV-0944 |
| | § | |
| UNITED HEALTHCARE DENTAL INC., *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion to Remand (the "Motion") [Doc. # 7] filed by Plaintiff Texas Oral and Facial Surgery, PA ("TXOS" or "Plaintiff"), to which Defendants United Healthcare Dental, Inc. ("United") and Shell Oil Company ("Shell") filed a Response [Doc. # 11].[1]  Based on the full record and governing legal authorities, the Court is unpersuaded that the Employee Retirement Income Security Act ("ERISA") completely preempts any of Plaintiff TXOS's claims.  As a result, the Court may not exercise subject matter jurisdiction over this dispute and the Motion is **granted**.

---

[1]  Plaintiff has not filed a reply and the deadline to do so under the Court's local procedures has expired.

# I.   BACKGROUND

Plaintiff TXOS offers oral surgery services to patients in Texas, including to Shell employees who enjoy insurance benefits pursuant to an ERISA-governed benefit plan (the "Plan").  According to Plaintiff TXOS, United provides dental insurance to Shell employees covered by the Plan.  Plaintiff alleges that Shell represented in writing to both its employees and third-party medical providers such as itself that "any cutting procedure done in a dental office setting is 100% covered" under the Plan. Fourth Amended Petition [Doc. # 6], p. 2.  TXOS also asserts that United separately represented to it orally during the insurance preapproval process for Shell employees that any "cutting procedure" would be 100% covered.  *Id.*  TXOS alleges that it performed dental surgery for many Shell employees for whom Defendant United subsequently denied total coverage.

Plaintiff filed this lawsuit in Texas state court in early-June 2017 alleging that Shell negligently misrepresented the insurance coverage it provides its employees, and that United's false representation that it would provide 100% coverage for the services TXOS had preapproved for Shell employees constituted fraud and breach of contract.  Defendants unsuccessfully attempted to remove Plaintiff's First Amended Petition to federal court on the grounds that Plaintiff's

claims were preempted by ERISA (the "Initial Removal").[2]  In deciding the merits of the Initial Removal, this Court concluded that Defendants failed to demonstrate satisfaction of the first element of the two-part test for "complete preemption" under ERISA established by the Supreme Court in *Aetna Health Inc. v. Davila* ("*Davila*").[3]  Specifically, in connection with the Initial Removal, Defendants were unable to demonstrate that Plaintiff could have asserted its state law claims under ERISA, either directly or by virtue of an assignment of benefits from the Shell employees it treated.

Following remand, the parties engaged in discovery.  During the discovery process, it was established that at least some of the Shell employees that received treatment from Plaintiff TXOS had assigned their benefits under the Plan to Plaintiff.  Plaintiff also amended its petition two additional times.  In its state court Third Amended Petition filed November 27, 2017, Plaintiff not only continued to assert the same negligent misrepresentation claim against Shell and fraud and breach of contract claims against United that had been the subject of the Initial Removal, but also included a fourth claim for "statutory violations."  In the new claim, Plaintiff alleged numerous violations of the Texas Administrative Code,

---

[2]      *See* Memorandum and Order, dated April 13, 2017 [Doc. # 1-13], at ECF 33-37.

[3]      542 U.S. 200 (2004).

Texas Insurance Code, and Texas Business and Commerce Code (the "Statutory Claims").

On March 26, 2018, Defendants filed a timely Notice of Removal [Doc. # 1]. Defendants assert in the Notice of Removal that at least one of Plaintiff's state law claims is subject to "complete preemption" under *Davila*, and thus the Court has subject matter jurisdiction over this dispute. In response, Plaintiff filed the pending Motion and also moved for leave to file a Fourth Amended Petition.[4] The proposed Fourth Amended Petition abandons the Statutory Claims, but in all other respects is substantively identical to the Third Amended Petition.[5] The Court **grants** Plaintiff's Motion for Leave [Doc. # 8], and deems the Fourth Amended

---

[4]    Plaintiff's Motion for Leave [Doc. # 8].

[5]    Defendants have moved to strike the Fourth Amended Petition on the grounds that Plaintiff filed that petition as a separate docket item without first seeking leave of Court to do so. Defendants' Motion to Strike Fourth Amended Complaint [Doc. # 9]. This argument is hyper-technical and entirely unpersuasive. Plaintiff filed its Motion for Leave and its Fourth Amended Petition on the same date, rather than attaching the proposed pleading to the Motion for Leave. This error is not material. Given that the thrust of the new pleading was Plaintiff TXOS' abandonment of a recently added claim, that this case is still in its earliest stages before this Court, and that leave to amend is to be freely given particularly before a pleading amendment deadline is established, the Court grants leave to amend. Defendants' Motion to Strike Fourth Amended Complaint [Doc. # 9] is **denied**. In the event Plaintiff amends its petition again on remand to reassert the Statutory Claims (or claims comparable thereto), Defendants may seek removal on the basis that such claims are completely preempted under *Davila*. If Defendants seek such removal, Plaintiff will not be granted leave again to amend its petition to abandon its reasserted Statutory Claims (or claims comparable thereto).

Complaint [Doc. # 6] Plaintiff's operative pleading for purposes of deciding the merits of the Motion.

The Court concludes that none of Plaintiff's state law claims in the Fourth Amended Petition are subject to "complete preemption" under *Davila*, and subject matter jurisdiction is lacking as a result. This case accordingly must be remanded to Texas state court.[6]

## II. LEGAL STANDARD FOR COMPLETE PREEMPTION UNDER ERISA

Federal jurisdiction is limited. The party invoking this Court's removal jurisdiction bears the burden of establishing federal jurisdiction. *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001); *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997) (citation omitted). The removal statute "is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank*, 128 F.3d at 922; *Manguno*, 276 F.3d at 723. In evaluating the propriety of removal, this Court must evaluate all factual allegations

---

[6] The Court therefore cannot reach the merits of Defendant United's Motion for Summary Judgment [Doc. # 13] and Defendant Shell's Motion for Summary Judgment [Doc. # 14]. These motions remain pending for disposition as the state court deems appropriate.

in the light most favorable to Plaintiff, must resolve all contested issues of fact in favor of Plaintiff, and must resolve all ambiguities of controlling state law in favor of Plaintiff. *See Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) (citations omitted).

Removal is proper if the federal district court has original jurisdiction over an action brought in state court. *See* 28 U.S.C. § 1441(a). In order to determine whether a case was properly removed to federal court on the basis of federal question jurisdiction, a court must normally examine the plaintiff's claims under the well-pleaded complaint rule. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998). Under the well-pleaded complaint rule, "a defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." *Aetna Health Inc. v. Davila Davila*, 542 U.S. 200, 207 (2004) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 10 (emphasis in *Davila*)). "The existence of a federal defense normally does not create statutory 'arising under' jurisdiction." *Id.* Thus, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet*, 522 U.S. at 475. Even if the factual predicate underlying a plaintiff's complaint could have served as the basis for a federal claim, the plaintiff has the prerogative to forgo the federal claim and assert only state law claims in

order to prevent removal. The well-pleaded complaint rule makes the plaintiff the master of the claim; the plaintiff may avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

In certain areas of the law, however, a federal statute may wholly displace and therefore completely preempt a plaintiff's state law claim, rendering an action removable despite the plaintiff's efforts to keep the action in state court. *See Davila*, 542 U.S. at 208. Under the complete preemption doctrine, Congress may so completely preempt a particular field that any complaint raising claims in that field is necessarily federal in nature. *Rivet*, 522 U.S. at 475 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law.").

Section 502(a) of ERISA, 29 U.S.C. § 1132(a), is one such statute:

> [T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. Hence, causes of action within the scope of the civil enforcement provisions of § 502(a) are removable to federal court.

*Davila*, 542 U.S. at 209 (citations omitted) (holding that state law claims brought by beneficiaries and participants in ERISA-regulated employee benefit plans for failure to exercise ordinary care in handling coverage for medical treatments were

completely preempted).  In *Davila*, the Supreme Court stated the test for complete

preemption of claims under § 502 of ERISA:

> [I]f an individual brings suit complaining of a denial of coverage for
> medical care, where the individual is entitled to such coverage only
> because of the terms of an ERISA-regulated employee benefit plan,
> and where no legal duty (state or federal) independent of ERISA or
> the plan terms is violated, then the suit falls "within the scope of"
> ERISA § 502(a)(1)(B).  In other words, if an individual, at some point
> in time, could have brought his claim under ERISA § 502(a)(1)(B),
> and where there is no other independent legal duty that is implicated
> by a defendant's actions, then the individual's cause of action is
> completely pre-empted by ERISA § 502(a)(1)(B).

*Id.* at 210 (citation omitted).[7]

Accordingly, under the *Davila* analysis, this case is removable only if: (1)

Plaintiffs TXOS could have brought any of its state-law claims under ERISA

---

[7]    "Complete preemption" is distinct from the concept of "conflict preemption."  The
former permits removal to federal court of certain state law claims that fall within
the ambit of ERISA § 502(a).  *McKnight v. Dresser, Inc.*, 676 F.3d 426, 430 (5th
Cir. 2012).  The latter, which arises under ERISA § 514, covers state law claims
that "relate to an[ ] employee benefit plan," and provides only a federal defense; it
does not create a jurisdictional bar.  Conflict preemption accordingly is not a basis
for removal.  *Quality Infusion Care Inc. v. Humana Health Plan of Texas Inc.*, 290
F. App'x 671, 674 (5th Cir. 2008).  To establish conflict preemption, a defendant
must prove: "(1) the state law claims address an area of exclusive federal concern,
such as the right to receive benefits under the terms of an ERISA plan; and (2) the
claims directly affect the relationship among traditional ERISA entities—the
employer, the plan and its fiduciaries, and the participants and beneficiaries."
*Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir.
1990); *Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Texas, Inc.*, 16
F. Supp. 3d 767, 779–80 (S.D. Tex. 2014).

§ 502, and (2) no other independent legal duty supports the claim(s). *Id.*; *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530 (5th Cir. 2009).

## III. <u>ANALYSIS</u>

### A. *Davila*'s First Prong

The first question under *Davila*'s complete preemption test is whether Plaintiff is an "individual bring[ing] suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan," or "an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210. The Fifth Circuit has held that a third-party medical provider has standing to sue under § 502(a) as an assignee of a participant or beneficiary in order to claim plan benefits. *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 195 (5th Cir. 2015) ("It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim.") (quoting *Harris Methodist Fort Worth v. Sales Support Servs., Inc. Employee Health Care Plan*, 426 F.3d 330, 333–34 (5th Cir. 2005)). It is undisputed that Plaintiff received an assignment of benefits from at least some of the Shell employees it treated as to whom United denied 100% coverage. However, the parties disagree whether Plaintiff's receipt of benefit assignments, in

of itself, is sufficient to satisfy *Davila*'s first prong. It is not necessary to decide this issue. For the reasons stated in section III.B *infra*, the Court concludes that none of Plaintiff's state law claims satisfy *Davila*'s second prong. Accordingly, the Court assumes, without deciding, that Plaintiff's status as an assignee of Shell's employee's benefits under the Plan suffices for purposes of *Davila*'s first prong and turns to analysis of Plaintiff's claims under *Davila*'s second prong.

### B.   *Davila*'s Second Prong

The second question in the *Davila* complete preemption analysis is whether, for purposes of determining the Court's subject matter jurisdiction, Defendants' actions implicate a legal duty that is entirely independent of ERISA. *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 418 (5th Cir. 2008); *Innova Hosp. San Antonio, L.P. v. Humana Ins. Co.*, 25 F. Supp. 3d 951, 961 (W.D. Tex. 2014). This question asks whether a plaintiff is in fact suing under obligations created by the ERISA plan itself, or under obligations independent of the plan and the plan member. The overarching "crucial question" for a complete preemption analysis "is whether [a plaintiff is] in fact seeking benefits under the terms of the plan, or rights that derive from" an independent source, such as separate contract. *Lone Star OB/GYN Associates*, 579 F.3d at 529 n.3. A legal duty is not independent of ERISA if it "derives entirely from the particular rights and obligations established by [ERISA] benefit plans." *Davila*, 542 U.S. at 210; *accord Ambulatory Infusion*

*Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, 2006 WL 1663752, at *7 (S.D. Tex. June 13, 2006). The Court evaluates *seriatim* Plaintiff's state law claims for negligent misrepresentation against Shell, and breach of contract and fraud against United, under *Davila*'s second prong.

### 1.  Negligent Misrepresentation

Plaintiff's first cause of action is a claim for negligent misrepresentation against Shell. The basis for this claim is Shell's alleged distribution of "dental insurance literature" to Plaintiff TXOS, which represented that "any cutting procedure done in a dentist's office would be 100% covered." Defendants assert, and Plaintiff does not appear to dispute, that the "dental insurance literature" in question is the Plan itself or a summary or a description of its terms. Defendants contend that Plaintiff's negligent misrepresentation claim therefore depends on the Plan's terms and does not implicate an independent legal duty. The Court disagrees.

The Fifth Circuit has not applied *Davila*'s complete preemption test to state law claims for negligent misrepresentation. In analyzing the applicability of the affirmative defense of conflict preemption under ERISA § 514, however, the Fifth Circuit has rejected the argument that a cause of action is preempted merely because it is "based on misrepresentations regarding the extent of coverage under an ERISA plan or the manner of processing and disposing of the claim for payment

by the ERISA plan."[8]  Indeed, the Circuit has ruled that a misrepresentation claim regarding the extent of coverage under an ERISA plan does not necessarily depend on, nor is necessarily derived from, rights to recover benefits under the terms of an ERISA-governed plan.  A misrepresentation claim can be premised on legal duties independent of ERISA.[9]  Although Defendants correctly assert that the standards for ERISA § 514 conflict preemption, *i.e.*, the applicability of an affirmative defense, and for complete preemption under *Davila*, *i.e.*, whether a state law claim actually is a claim under ERISA, differ, Defendants cite no authority for the proposition that any distinction between these preemption standards is material for

---

[8]    *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 383 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012).  *See also Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc.*, 164 F.3d 952, 955 (5th Cir. 1999) (rejecting proposition that ERISA preempts state law causes of action based on misrepresentations regarding the extent of an insured's coverage); *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990) ("Rather, Memorial seeks damages from an insurance company and its alleged agent, claiming that, had it not been for negligent misrepresentations of coverage, Memorial would not have accepted the financial risk of providing medical treatment to Echols. We do not think that Congress intended ERISA to regulate the commercial interactions of such entities in such situations.").

[9]    *See Access Mediquip*, 662 F.3d at 385 ("The state law underlying [the plaintiff's] misrepresentation claims does not purport to regulate what benefits [the defendant] provides to the beneficiaries of its ERISA plans, but rather what representations it makes to third parties about the extent to which it will pay for their services. To prevail on these claims, [the plaintiff] need not show that [the defendant] breached the duties and standard of conduct for an ERISA plan administrator, because [the plaintiff's] alleged right to reimbursement does not depend on the terms of the ERISA plans.").

P:\ORDERS\11-2018\944Remand.docx  180625.1643

purposes of the Motion.[10]   To the contrary, because "[c]onflict preemption is broader than complete preemption and as a result preempts more state law claims,"[11] the Court concludes that the Fifth Circuit's discussion of negligent misrepresentation claims in both *Access Mediquip* and *Transitional* are instructive in this case.[12]

---

[10]   In fact, the authority cited by Defendants regarding this claim misses the mark. For example, Defendants assert that in *Found. Ancillary Servs., L.L.C. v. United Healthcare Ins. Co.*, 2011 WL 4944040 (S.D. Tex. Oct. 17, 2011), the court held that the plaintiff's negligent misrepresentation claim was completely preempted. Response [Doc. # 11], p. 19.   However, the court in that case held only that the plaintiff's promissory estoppel claim was completely preempted.   It did not reach the preemption issue with respect to the plaintiff's numerous other claims.   *See Found. Ancillary Servs., L.L.C.*, 2011 WL 4944040, at *3 ("Plaintiff's state claim for promissory estoppel is completely preempted by ERISA, giving this Court federal removal jurisdiction over the claim and supplemental jurisdiction over all remaining claims.   Plaintiff's Motion to Remand must therefore be denied." (internal quotation marks and citation omitted)).   Another example is Defendants' citation to *Andersen v. Chrysler Corp.*, 99 F.3d 846 (7th Cir. 1996), for the proposition that ERISA contains no implied right of action for deceit or misrepresentation. *Id.* at 856. *Andersen* is readily distinguishable from the case at bar because the plaintiffs in *Anderson* were participants in an ERISA-governed benefits plan; they were not a third-party medical provider.   ERISA § 102(a)(1), on which the Seventh Circuit based its conclusion, only requires that summary benefit plan descriptions "shall be written in a manner calculated to be understood by the *average plan participant*, and shall be sufficiently accurate and comprehensive to reasonably apprise such *participants and beneficiaries* of their rights and obligations under the plan."   ERISA § 102(a)(1), 29 U.S.C. § 1022(a)(1) (emphasis added).

[11]   *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 950 n.3 (E.D. Tex. 2011) (citing *Conn. State Dental v. Anthem Health Plans*, 591 F.3d 1337, 1344 (11th Cir. 2009)).

[12]   *See id.* at 952 n.6 ("That the state law claims in *Transitional* survived conflict preemption under § 514, the form of ERISA preemption that is broader and takes
(continued…)

As pleaded, Plaintiff's negligent misrepresentation claim,[13] much like the plaintiff's negligent misrepresentation claim in *Access Mediquip*, "do[ ] not depend on whether [Plaintiff's] services were or were not fully covered under the patients' plans."[14] This is because if the Plan provides less coverage than Shell allegedly indicated, Plaintiff "must still prove that it was reasonable to rely on [Shell's] statements as representations of how much and under what terms [Plaintiff] could

---

(continued…)
in more claims than complete preemption, further suggests that the state claims in the instant case [, including a claim for negligent misrepresentation,] are not subject to complete preemption.")

[13] Under Texas law, the elements of a negligent-misrepresentation cause of action consist of: "(1) defendant's representation to a plaintiff in the course of defendant's business or in a transaction in which the defendant had an interest; (2) defendant's providing false information for the guidance of others; (3) defendant's failure to exercise reasonable care or competence in obtaining or communicating information; (4) plaintiff's justifiable reliance on defendant's representation; and (5) defendant's negligent misrepresentation proximately causing the plaintiff's injury. *Willis v. Marshall*, 401 S.W.3d 689, 698 (Tex. App.—El Paso 2013, no pet.).

[14] *Access Mediquip*, 662 F.3d at 385. Defendants argue that correspondence produced during discovery purportedly showing Plaintiff seeking reimbursement from United on behalf of Shell employees based on the terms of the Plan demonstrates otherwise. Response [Doc. # 11], ¶ 13. The Court disagrees. Even if the correspondence is evidence that Plaintiff it *could* have brought a claim for benefits under the Plan as an assignee of Shell's employees, it does not establish that such a benefits claim is the claim Plaintiff *actually* asserts. Moreover, while this correspondence might aid Defendants on the merits to ultimately defeat Plaintiff's negligent misrepresentation claim, the merits and Plaintiff's likelihood of success thereon are irrelevant to the issue of whether Plaintiff's claim, as asserted, implicates a duty independent of the Plan or ERISA.

expect to be paid."[15]   Moreover, even if the Plan provides the same level of coverage Shell indicated in its "insurance literature," Plaintiff "may nevertheless seek to prove its misrepresentation claims by showing that [Shell's] statements regarding coverage, while accurate, were nevertheless misleading because [Shell] omitted to mention that, covered or not, [Plaintiff's] services would not be reimbursed."[16]   "Consultation of the [P]lan's terms is thus not necessary to evaluate whether [Shell's] statements were misleading,"[17] and, consequently, Plaintiff's negligent misrepresentation claim implicates a duty independent of ERISA.   Therefore, this claim is not subject to complete preemption under *Davila*.

## 2.     Breach of Contract

Plaintiff next asserts a claim for breach of contract against United.   On its face, Plaintiff's breach of contract claim does not assert rights under, or seek enforcement of, the Plan.   Indeed, the claim is premised on the allegations that when Plaintiff's employees called United to preapprove treatment for Shell employees, United "formed a valid contract with Plaintiff when they pre-approved the cutting procedures at 100% coverage."[18]

---

[15]     *Id.*

[16]     *Id.*

[17]     *Id.*

[18]     Fourth Amended Petition [Doc. # 6], at ECF 7-8.

In support of their argument that Plaintiff's breach of contract claim does not implicate a legal duty independent of ERISA, Defendants cite *Spring, E.R., LLC v. Aetna Life Insurance Company* ("*Spring*"),[19] *Paragon Office Services, LLC v. UnitedHealthGroup, Inc.* ("*Paragon Office*"),[20] and *Ambulatory Infusion Therapy Specialists v. Aetna Life Insurance Company* ("*AITS*").[21] Although the courts in these cases found that the breach of contract claims in issue were subject to complete preemption under *Davila*, those cases each are distinguishable from the matter at bar.

In *Spring*, plaintiff health care provider Spring E.R. ("Spring") delivered emergency medical services to patients who presented insurance cards issued by defendant Aetna Life Insurance Company ("Aetna"). The insurance cards bore "express reference to the coverage terms and exclusions" of benefit plans governed by ERISA.[22] Aetna refused payment for Spring's services. Spring sued Aetna asserting breach of an "implied contract" based on the health insurance cards presented by the patients. Spring claimed the cards represented an offer by Aetna to pay for patients' emergency treatment, which offer Spring accepted by

---

[19]    2010 WL 598748 (S.D. Tex. Feb. 17, 2010) (Ellison, J.).

[20]    2012 WL 1019953 (N.D. Tex. Jun. 27, 2012) (Fitzwater, J.).

[21]    2006 WL 2521411 (S.D. Tex. Aug. 29, 2009) (Rosenthal, J.).

[22]    *Spring*, 2010 WL 598748 at *5.

providing such treatment.  The court held that Spring's "implied contract" claim was completely preempted under *Davila*.  In doing so, the court relied on the fact that the insurance cards in issue, which served as the basis for Spring's contract claim, expressly incorporated by reference the terms of ERISA-governed benefit plans.  Because the cards incorporated the terms of ERISA-regulated plans, the issue of "whether [Aetna] could be liable to [Spring] for failure to pay under an implied contract theory would turn on whether [Aetna] had an obligation to pay [Spring] under the ERISA plan identified on the card."[23]  Accordingly, the court concluded that Spring's implied contract claim did not implicate any duty independent of ERISA.

*Spring* is inapposite here.[24]  Plaintiff's breach of contract claim is not inherently based on the terms of an ERISA-governed benefits plan.[25]  The

---

[23]     *Id.*

[24]     Defendants' argue that this case is analogous to *Spring* because of documents it obtained in discovery that purport to show that when TXOS preauthorized procedures with United for Shell employees, TXOS received information about those employees' benefits under the Plan.  This argument lacks merit.  Assuming *arguendo* that TXOS could have asserted a claim for benefits under the Plan as the assignee of the rights of one or more Shell employees, that is not the claim TXOS has brought in this case.  Rather, TXOS, as the master of its complaint, has elected to limit itself to the pursuit of a distinct and more narrow claim, namely that United agreed to cover 100% of the costs of certain procedures it orally approved prior to each procedure, without regard to the terms of the Plan.  Whether TXOS ultimately can succeed in proving that an insurance company repeatedly agreed to pay for procedures irrespective of the terms of the underlying benefit plan is

(continued…)

gravamen of Plaintiff TXOS's contract claim is that, during the pre-approval process, United agreed to provide 100% coverage for the services TXOS proposed to provide to certain patients, without regard to the Plan's terms. The merits of such a claim do not involve, and can be resolved without reference to or analysis of, the Plan's terms. Accordingly, Plaintiff's breach of contract claim in this case implicates a duty independent of ERISA that United owed Plaintiff, *i.e.*, the unqualified promise to pay for certain services rendered. *Spring* does not compel a different conclusion.

Defendants' reliance on *Paragon Office* similarly lacks persuasive force. In *Paragon Office*, the district court held completely preempted the plaintiff medical providers' asserted implied contract claim against a group of insurers. The defendant insurers failed to pay the medical providers for anesthesia services rendered to the insureds. The implied contract claim in *Paragon Office* was not

---

(continued…)
irrelevant to the issue of whether such a claim implicates a non-ERISA legal duty and is completely preempted under *Davila*'s second prong.

[25] Indeed, the court in *Spring* specifically distinguished the facts of that case from those in *Marin General Hospital v. Modesto & Empire Transaction Company*, 581 F.3d 941 (9th Cir. 2009). In *Marin*, the Ninth Circuit held that the plaintiff-hospital's claims for breach of contract and negligent misrepresentation based on the defendant plan administrator's oral verification during the preauthorization process that it would pay 90% of a patient's charges were not subject to complete preemption under *Davila*. Unlike *Spring*, the facts and reasoning of *Marin* are on all fours with the case at bar.

based on insurance cards that patients presented to the providers; instead, the claim derived from "the parties' agreements and course of dealing."[26]  However, the *Paragon Office* Court specifically noted that the providers there did "not allege that [the insurers] indicated expressly or impliedly that [they] would cover their equipment services *regardless of the terms of the ERISA plans*."[27]  Absent such an allegation, and absent evidence that the parties had entered into a separate provider agreement, the court found that uncontradicted evidence of record that the insurers had refused payment to the providers based on the terms of ERISA-regulated benefit plans, which evidence demonstrated that the true nature of the providers' claim was the pursuit of a right to payment according to the terms of ERISA-regulated plans.  Accordingly, the *Paragon Office* court held the providers' implied contract claim did not implicate a duty independent of ERISA and was subject to complete preemption under *Davila*.

   *Paragon Office* is not controlling here.  The facts of *Paragon Office* differ fundamentally from the allegations at bar with respect to the critical issue of the basis for the alleged contract in issue.  The purported contract between Plaintiff and United in this case is based on United's alleged explicit promise during the

---

[26]  *Paragon Office,* 2012 WL 1019953 at * 1.

[27]  *Id.* at *8 n.13.

preauthorization process to cover 100% of the costs of the services Plaintiff provided to United's insureds. There is no reference to an ERISA-governed plan or contract. The plaintiffs in *Paragon Office* made no comparable allegations. Instead, those providers relied on their course of dealing with the defendant insurers, which course of dealing, based on the record before the court in that case, clearly involved the assertion of rights and payment of claims pursuant to the terms of ERISA-governed benefit plans.[28] The preemption holding in *Paragon Office* that the plaintiffs' implied contract claim predicated on undefined "agreements" and a "course of dealing" does not inform TXOS's breach of contract claim here.

For similar reasons, the Court also concludes that *AITS* is inapplicable to this case. Like *Spring* and *Paragon Office*, *AITS* involved claims by a plaintiff medical service provider against a defendant insurer for failing to pay for services that the plaintiff had provided to the defendant's insured. The defendant refused payment "on the grounds that the charges were duplicative or exceeded the reasonable and customary fees for such services."[29] One of the claims asserted by the plaintiff in

---

[28]     *Id.* at *8 ("In their breach of implied contract claim, plaintiffs allege that their right to payment derives from the parties' agreements and course of dealing. But the record shows that the out-of-network plaintiffs do not have a provider agreement with United, and these plaintiffs are seeking to recover plan benefits. In order for the out-of-network plaintiffs to recover at all, they must do so as assignees of United plan benefits, and they must establish a right to recover under the relevant ERISA plans.") (internal citations omitted).

[29]     *AITS*, 2006 WL 1663752 at *1.

20

*AITS* was for breach of contract. According to the plaintiff in that case, it had a binding contract with the defendant insurers because those insurers "made an independent promise to pay [the plaintiff] for the services rendered to [the d]efendants' insured and became bound to pay [the plaintiff] for those designated services, which were reasonable and customary for such services."[30] It does not appear that the plaintiff in *AITS* ever specifically articulated the basis for its assertion that the defendant had made "an independent promise" to pay for services rendered to its insured. There also was no evidence of a separate provider agreement between the plaintiff and either of the defendants in that case. Based on the record before it, the court in *AITS* concluded that "[r]esolution of the breach of contract claim requires interpretation of the [ERISA-governed benefit plan] to determine whether the specific services [the plaintiff] provided were covered as 'eligible expenses' or not covered because the services exceeded the price of 'reasonable and customary' services or were duplicative of other invoices already submitted and paid."[31] Therefore, the plaintiff's breach of contract claim was completely preempted because it was based on the defendant's obligations under

---

[30]    *Id.* at *2.

[31]    *Id.* at *8.

an ERISA-governed plan, not some other, ERISA-independent duty the defendant owed to the plaintiff.

Unlike the plaintiff in *AITS*, Plaintiff here has articulated clearly the basis of its breach of contract claim and that basis is independent of, and does not derive from, any ERISA-governed benefit plan. Also unlike the *AITS* case, resolving the merits of Plaintiff's breach of contract claim, *i.e.,* determining if United agreed to cover 100% of the cost of the procedures TXOS preapproved regardless of the terms of the Plan, will not require the Court to analyze or rely on the terms of the Plan. Given these material distinctions, the court's reasoning in *AITS* holds little weight when applied to the facts of this case.

In sum, Plaintiff's breach of contract claim against United is based on a representation that is independent of the Plan. While the views of the well-respected jurists Defendants cite in arguing that such a claim is completely preempted under *Davila* are informative, they are not binding and, in any event, the circumstances alleged in those matters are materially distinguishable from those at bar. The courts' conclusions in *Spring*, *Paragon Office*, and *AITS* are thus not dispositive in this case. Plaintiff's breach of contract claim implicates a duty United owes to TXOS that is independent of ERISA. Accordingly, this claim does not satisfy *Davila*'s second prong and is not subject to complete preemption.

### 3. Fraud

Plaintiff TXOS's final claim is for fraud against United on the grounds that United knowingly and falsely representing to TXOS that "any cutting procedure done in a dental office setting would be 100% covered." As with each of Plaintiff's other two claims, Defendants argue that this claim is subject to complete preemption because it necessarily requires review of the Plan and, thus, does not implicate a duty independent of ERISA. This argument lacks merit. Plaintiff's fraud claim, like its breach of contract claim, bears only a tangential connection to the terms of the Plan. The claim is based on the allegation that United made the unqualified representation that it would cover 100% of the costs of certain cutting procedures. The level of coverage actually afforded by the Plan is irrelevant; the merits of Plaintiff's fraud claim will turn solely on whether United made the false representation to TXOS that it would cover 100% of certain cutting procedures and whether United knew that representation was false. Said differently, the merits of Plaintiff's fraud claim do not implicate any duties United might have to TXOS under ERISA or the Plan.[32] Therefore, Plaintiff's fraud claim does not satisfy the second *Davila* prong, and is not subject to complete preemption.

---

[32] Despite attempting to distinguish Plaintiff's cited authority on the grounds that such cases pertain only to conflict, not complete, preemption, the only Fifth Circuit authority Defendant cites in support of its assertion that Plaintiff's fraud claim does not implicate an independent legal duty is a conflict preemption case.

(continued…)

## IV. CONCLUSION AND ORDER

Based on the foregoing, each of the three claims Plaintiff asserts in its operative pleading, negligent misrepresentation, breach of contract, and fraud, implicate duties Defendants owed Plaintiff TXOS independent from ERISA. As a result, none of Plaintiff's live claims satisfy *Davila*'s second prong or are subject to complete preemption. The Court accordingly lacks subject matter jurisdiction over any of Plaintiff TXOS's state law claims. It is therefore

**ORDERED** that Plaintiff's Motion to Remand [Doc. # 4] is **GRANTED**. It is further

**ORDERED** that the Court does not address Defendant UnitedHealthcare Dental, Inc.'s Motion for Summary Judgment [Doc. # 13] and Defendant Shell Oil Company's Motion for Summary Judgment [Doc. # 14], which remain pending for disposition as the state court deems appropriate.

---

(continued…)
*See* Response [Doc. # 11], p. 21 (citing *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir. 1988), *overruled by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012)). To the extent *Hermann* remains good law, its application of conflict preemption principles, which implicate a broader range of claims than complete preemption principles, is inapposite to this case. *See, e.g., Encompass*, 775 F. Supp. 2d at 952 (E.D. Tex. 2011) (concluding under *Davila* that third-party medical provider's negligent misrepresentation, fraud and promissory estoppel claims arising from the alleged representation by defendant insurers directly to the plaintiff that that the plaintiff's services would be covered under relevant health plans are not completely preempted).

P:\ORDERS\11-2018\944Remand.docx  180625.1643

The Court will issue a separate Remand Order.

SIGNED at Houston, Texas, this 25th day of **June, 2018**.